UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Texas Eastern Transmission, LP,

    Plaintiff,

    v.

3.2 Acres Permanent Easement,
and 4.2 Acres Temporary
Easement of Land in Colerain
Township, Belmont County,
Ohio, *et al.*,

    Defendants.

Case No. 2:14–cv–2650

Judge Michael H. Watson

## OPINION AND ORDER

Pursuant to the Natural Gas Act, 15 U.S.C. § 717 ("NGA") and Federal Rule of Civil Procedure 65, Texas Eastern Transmission, LP ("Plaintiff" or "Texas Eastern") moves for an order authorizing it to condemn various property interests necessary to commence construction of a natural gas pipeline. ECF No. 2. It further moves for a temporary restraining order ("TRO") and preliminary injunction granting immediate possession of those property interests. *Id.* For the following reasons, the Court **GRANTS** Plaintiff's motion. This Opinion and Order applies to only certain Defendants in this action as described more fully herein.

# I. FACTS

## A. Background

Texas Eastern is an interstate natural gas company engaged in transporting natural gas for public consumption. Amend. Compl. ¶¶ 5, 10, ECF No. 16. On December 2, 2014, the Federal Energy Regulatory Commission ("FERC") issued Texas Eastern a Certificate of Public Convenience and Necessity approving Texas Eastern's application to construct and operate an approximately seventy-six mile natural gas pipeline and associated support facilities across five Ohio counties ("Project"). *Id.* ¶ 20.

Texas Eastern avers that in order to complete the Project, it must acquire pipeline right-of-way easements from the affected landowners along the Project's route. *See* Martin Aff. ¶ 12, ECF No. 2-1; Savage Aff. ¶ 8, ECF No. 2-3. Texas Eastern has entered into easement agreements with a majority of the affected landowners. Savage Aff. ¶ 17, ECF No. 2-3. As explained in greater detail below, the Defendants in this case are the affected landowners who have rejected Texas Eastern's offers to acquire their property interests by contract or who have failed to respond to Texas Eastern's contact efforts.

Having obtained the FERC Certificate, Texas Eastern now seeks to acquire Defendants' property interests pursuant to the eminent domain power granted to it by the NGA. Amend. Compl. ¶ 48, ECF No. 16; *see also*, Amend. Compl. Ex. A, ECF No. 16-1 (describing the land parcels and property rights at issue).

Texas Eastern maintains it must acquire these property interests immediately in order to comply with FERC's regulations for the Project. It specifically avers the following. The FERC Certificate requires Texas Eastern to complete the Project and commence service by November 1, 2015. *Id.* ¶ 28. Before Texas Eastern can begin actual construction of the pipeline, it must clear the trees along the pipeline route. Martin Aff. ¶ 17, ECF No. 2-1. The FERC Certificate requires Texas Eastern to complete all tree-clearing activities before March 31, 2015. Amend. Compl. ¶ 35, ECF No. 1.

Texas Eastern alleges that in order to meet the tree-clearing and ultimate construction deadlines, it must begin tree clearing on January 12, 2015. *Id.* ¶ 37. It asserts that this deadline is the first in successive deadlines for the construction of the pipeline that must be met to ensure completion of the pipeline by November 1, 2015. In order to meet these impending deadlines, Texas Eastern seeks immediate possession of Defendants' property interests.

**B. Procedural History and Remaining Defendants**

On December 16, 2014, Texas Eastern filed a Verified Complaint for Condemnation/Eminent Domain and Injunctive Relief for Immediate Possession of Pipeline Easements. ECF No. 1. Texas Eastern named each property and owner(s) thereof for which it had not been able to acquire the necessary easement interests through contract, as well as entities that have or may have an interest in those properties. On December 23, 2014, Texas Eastern filed an Amended Complaint, adding new defendant-properties/owners and new entities

that have or might have an interest in certain defendant properties. ECF No. 16. In total, Texas Eastern filed suit against fifty properties/landowner(s) and twenty-six entities that might have interests in the properties.

On the same date it filed this condemnation action, Texas Eastern filed this instant motion seeking an order granting it immediate possession of the subject properties by January 12, 2015 in order to commence construction of the pipeline, which construction begins with tree-clearing activities. ECF No. 2. Pursuant to Southern District Local Rule 65.1, the Court held an Informal Preliminary Conference on December 23, 2014. ECF Nos. 5, 15. Numerous counsel for various defendants, both property owners and entities with interests, appeared at the Informal Preliminary Conference, where the Court set a hearing for January 6, 2015 on Plaintiff's request for both a TRO and preliminary injunction. ECF No. 15.

The Court held a hearing on January 6, 2015. By this time, Texas Eastern had entered into various arrangements with the vast majority of the originally named Defendants, which resulted in stipulations, dismissals, or joint requests for stays. Accordingly, no defendant appeared at the January 6, 2015 hearing opposing Texas Eastern's request for immediate possession.[1]

To date, two Defendant landowners remain in this action: Robert Keenan and Lisa Clark. Texas Eastern has been in continuous communication with all

---

[1] Texas Eastern proffered additional evidence for the record at the hearing, See Pl. Ex. 1–90, which the Court hereby formally admits into the record.

landowners affected by the pipeline, including Defendant landowners, since as early as February 4, 2013. Pl. Ex. 75-034–038. Each of these Defendants has received multiple touch-points of communication from Texas Eastern about the Project.[2]

In addition to these individual landowners, there remain four other sets of Defendants. The first set is comprised of non-fee interest holders who have received notice of this action but have not appeared.[3] The second includes Defendants that moved jointly with Texas Eastern and have been granted stays while the parties negotiate the terms of their respective real property interests and/or compensation for such interests.[4] The third set includes Defendants that

---

[2] These communications include: initial letters detailing the background and process of the Project; letters notifying Defendants of Open Houses and public meetings regarding the Project; letters requesting consent for surveying activities; and letters advising Defendants of the FERC proceeding and of the procedures for intervening in the FERC proceeding. Additionally, Texas Eastern engaged or attempted to engage on multiple occasions each Defendant in settlement negotiations, including substantial efforts to settle after Texas Eastern filed this action and sought injunctive relief. See Pl. Ex. 75 (pre-hearing communication with Keenan), Pl. Ex. 76 (same), Pl. Ex. 77 (same), Gerken Aff. ¶ 4, ECF No. 189 (attempts to serve Keenan), ECF No. 195 (personal service on Keenan), Flint Aff. Ex. A, ECF No. 207-2 (detailing history of communication with Keenan), and Pl. Ex. 77-001 (listing most recent appraised value at $14,850); Flint Aff. ¶ 2, ECF No. 207-1 (detailing communications with Lisa Clark, wherein she states she does not want to get involved in the lawsuit); Pl. Ex. 081-001 (listing most recent appraised value for Lisa Clark's property at $4,742).

[3] These Defendants include: Rice Drilling D LLC, ECF No. 161; Hess Ohio Resources LLC fka Marquette Exploration LLC, ECF No. 113; Hess Ohio Resources LLC fka Marquette Orri Holdings, ECF No. 114; Percheron, LLC, ECF No. 46; Tri-Star Energy Holdings, Inc., ECF No. 160; The Edward Barr Corp., ECF No. 58; Great River Energy, LLC, ECF No. 59; and Baltimore & Ohio Railroad aka CSX Transportation, Inc., ECF No. 69.

[4] These Defendants include: Ohio Resources Company, ECF Nos. 37, 156; United States Environmental Protection Agency, id.; Phyllis A. (Widmor) Martinkoski and Richard E. Martinkoski, ECF Nos. 45, 163; and Gerald G. Ciofani and Doris E. Ciofani, Bonnie J. Proger and Alex J. Proger, Gary A. Clark, Gregory Clark, Daneen M. Clark,

have been served, appeared in the lawsuit, and entered into stipulations with Texas Eastern.[5] The final set of Defendants is comprised of Defendants that have been served, are represented by counsel, and have filed answers. ECF Nos. 49, 51, 68, 115, 157, 158, 172.[6] None of these Defendants entered an official appearance in opposition to Texas Eastern at the hearing for injunctive relief.

## II. DISCUSSION

Texas Eastern moves for an order granting it authorization to condemn Defendants' property interests and for a temporary restraining order and preliminary injunction for immediate possession of those interests. The Court addresses each request for relief in turn.

---

Nancy Jane Clark, the Carol L. Whetzel Revocable Trust, Kenneth O. Whetzel, Guianne, LLC, Kriechbaum Management, Karen Sue Saladin, Keith A. Taylor and Linda J. Taylor, John E. Saladin, Jr., Timothy A. Mapel, Charles E. Anderson and Julie A. Anderson, Wesley W. Burgett and Mary J. Burgett, Brian Powley Revocable Trust, Donna A. Current, Bernard L. Ravasio, Cameron Waller and Beth Renee Waller, Janet L. Householder and Thomas W. Householder, Donald B. Bishop, and Yancey Clark, ECF Nos. 118, 165; American Electric Power and Ohio Power Company, ECF Nos. 121, 164; RCVV, Inc., ECF Nos. 184, 190; The Ohio Bell Telephone Company, ECF Nos. 187, 191; South Central Power Company, ECF No. 215; the James Deen Polen Trust, the Jon Craig Polen Trust, and the Rodney Charles Polen Trust, ECF No. 220; and the Linda K. Kessler Living Trust, ECF No. 222. All of these parties are represented by counsel.

[5] These Defendants include: Regency Utica Gas Gathering LLC (formerly known as PVR Utica Gas Gathering, LLC), ECF No. 39; Ohio River Systems LLC, *id.*; Belmont County Sewer District #3, ECF No. 47; Ohio Edison Company, ECF No. 101; and Dominion Transmission, Inc., successor in interest to Defendant Consolidated Gas Supply Corporation, ECF No. 186.

[6] These Defendants include: Chesapeake Exploration LLC, Chesapeake Appalachia LLC, Dale Property Services Penn, LP, and Reserve Energy Exploration Company.

## A. Whether Texas Eastern is Authorized to Condemn the Properties

Texas Eastern submits it has a substantive right to condemn the property interests at issue pursuant to the NGA.

The NGA establishes a federal regulatory scheme for the transportation and sale of natural gas in interstate and foreign commerce. 15 U.S.C. § 717(b). Congress delegated the regulatory authority established by the NGA to FERC. *Alliance Pipeline L.P. v. 4,500 Acres of Land*, 911 F. Supp. 2d 805, 810 (D. N.D. 2012) (citing 42 U.S.C. § 7171). Natural gas companies may undertake the construction or operation of natural gas facilities only if FERC issues to the company a certificate of public convenience and necessity authorizing such conduct. 15 U.S.C. § 717f(c)(1)(A).

Relevant to this action, the NGA permits natural gas companies, through the right to eminent domain, to acquire property rights necessary to facilitate the operation and construction of a natural gas pipeline. 15 U.S.C. § 717f(h). Specifically, a natural gas company may exercise the right of eminent domain to acquire property rights where: (1) the company holds a certificate of public convenience and necessity; (2) the company is unable to acquire the property by contract or is unable to agree with the property owners as to the amount of compensation to be paid; and (3) the use of the property is necessary to comply with the certificate. 15 U.S.C. § 717f(h). District courts have jurisdiction over cases only where the amount claimed by the property owner exceeds $3,000. *Id.*

Satisfaction of these requirements establishes a substantive right to condemnation.

Texas Eastern has satisfied these requirements. First, it holds a certificate of public convenience and necessity. Amend. Compl., Ex. B, ECF No. 16-2. Second, the parties have been unable to resolve the dispute by contract or agree on the amount of compensation to be paid. Savage Aff. ¶¶ 18–23, ECF No. 2-3. Third, Texas Eastern has presented uncontested evidence that the property interests it seeks are necessary to construct the pipeline pursuant to the FERC certificate. See Martin Aff. ¶ 15, ECF No. 2-1 (sworn testimony of principal Project manager working on the Project stating that Defendants' properties are within the scope of the FERC certificate); Savage Aff. ¶ 8, ECF No. 2-3 (sworn testimony of Project's right-of-way Project manager stating that for the majority of the properties at issue, Texas Eastern requires: (1) 50-foot wide easements for purposes of placing, operating, and maintaining the pipeline; (2) 100-foot wide temporary work space easements for construction purposes; and (3) reasonable access necessary to maintain the Project and rights-of-way). Moreover, this Court has jurisdiction over the action as the amount claimed by each Defendant exceeds $3,000. Accordingly, Texas Eastern has a substantive right under the NGA to condemn Defendants' property.

That does not end the inquiry, however. Because Texas Eastern seeks to condemn the property by right of eminent domain, it must also demonstrate its compliance with Federal Rule of Civil Procedure 71.1. Rule 71.1 governs federal

proceedings to condemn real and personal property by eminent domain. Fed. R. Civ. P. 71.1(a). It requires a complaint for condemnation by eminent domain to contain a short and plain statement of the authority for the taking, the uses for which the property is to be taken, a description sufficient to identify the property, the interests to be acquired, and a designation of each defendant who has been joined as an owner of the property or property interest. Fed. R. Civ. P. 71.1(c). It further requires plaintiffs to personally serve upon defendants a notice of the action identifying the interest to be taken, the authority for the taking, the uses for which the property is to be taken, the requirements for answering the complaint, and the consequences of failing to do so. Fed. R. Civ. P. 71.1(c).

Texas Eastern has complied with these requirements. It included all of the required allegations in its amended complaint, and it has personally served notices containing the required information to the named defendants. Amend. Compl., ECF No. 16; Amend Compl. Ex. A, ECF No. 16-1; Notices, Amend. Compl., Ex. E, ECF No. 16-5; Affidavits of Service, ECF Nos. 46, 49, 51, 52, 53, 54, 58, 59, 68, 69, 72, 77, 81, 87, 104, 105, 113, 114, 115, 160, 161, 195.

In sum, by satisfying the requirements of the NGA and Rule 71.1, Texas Eastern has demonstrated that it is entitled to condemn the property interests at issue, and the Court so orders.

## B. Whether Texas Eastern is Entitled to Immediate Possession

Having determined that Texas Eastern has a substantive right to condemn Defendants' property, the Court must next determine whether Texas Eastern has the right to immediate possession of that property.

Although the NGA and Rule 71.1 do not provide for immediate possession, numerous federal courts have held that where a plaintiff establishes a substantive right to condemn property under the NGA, courts may exercise their inherent equitable power to grant immediate possession through the issuance of a preliminary injunction. *See, e.g., East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004); *N. Natural Gas. Co. v. Approximately 9117.53 acres in Pratt, Kingman, and Reno Cntys., Kansas*, No. 10–1232–MLB, 2012 WL 859728, at *4–*7 (D. Kansas Mar. 13, 2012); *Gulf Crossing Pipeline Co. LLC v. 7.50 Acres*, No. 4:8CV178, 2008 WL 2774534, at *5 n.1 (E.D. TX July 8, 2008) (collecting cases); *USG Pipeline Co. v. 1.74 Acres in Marion Cnty., Tennessee*, 1 F. Supp. 2d 816, 825–26 (E.D. Tenn. 1998); *Tennessee Gas Pipeline Co. v. New England Power, C.T.C., Inc.*, 6 F. Supp. 2d 102, 104 (D. Mass. 1998). While the Sixth Circuit has not addressed the issue, this Court has previously adopted the reasoning of these federal courts to grant immediate possession under the NGA. *See Rockies Exp. Pipeline, LLC v. 4.895 Acres of Land*, No. 2:08–CV–554, 2008 WL 4758688, at *2, *5 (S.D. Ohio Oct. 27, 2008) (incorporating the analysis of federal courts recognizing authority to grant immediate possession and granting

natural gas pipeline company immediate possession of right-of-way servitudes necessary for pipeline construction).

The key inquiry is therefore whether Texas Eastern is entitled to a TRO or preliminary injunction granting immediate possession. Because Defendants have received notice of the proceedings, the Court addresses Texas Eastern's request for a preliminary injunction. See Fed. R. Civ. P. 65(a)(1).[7] Federal Rule of Civil Procedure 65 permits the Court to issue preliminary injunctions upon the satisfaction of certain requirements. The Court considers four factors in determining whether to grant injunctive relief: (1) whether the movant has established a substantial probability of success on the merits; (2) whether the movant would suffer irreparable harm in the absence of an injunction; (3) whether an injunction would substantially harm third parties; and (4) whether an injunction would serve the public interest. Winnett v. Caterpillar, Inc., 609 F.3d 404, 408 (6th Cir. 2010). The factors are not prerequisites; rather, they must be balanced in weighing the equities involved. Capobianco, D.C. v. Summers, 377 F.3d 559, 561 (6th Cir. 2004). The Court addresses each factor in turn.

---

[7] Texas Eastern filed the initial complaint and motion for injunctive relief on December 16, 2014. The Court promptly held a preliminary informal conference on December 23, 2014, noticed a hearing on the TRO and preliminary injunction on that same day, and held the hearing on January 6, 2015. Each Defendant has been personally served with a Rule 71.1(d) notice of the condemnation action, a copy of Texas Eastern's Motion for Condemnation Order, and Temporary Restraining Order and Preliminary Injunction, and Texas Eastern's Motion for Appointment of Commission.

### 1. Probability of Success on the Merits

Texas Eastern's substantive right to condemnation demonstrates a strong likelihood of success on the merits.

### 2. Irreparable Harm

Texas Eastern will likely suffer irreparable harm absent immediate possession of the property rights it seeks.

The Project's construction requires "the careful coordination of multiple teams performing various stages of work on a rolling basis throughout the length of the 75.8-mile pipeline." Martin Aff. ¶ 16, ECF No. 2-1. Before beginning actual construction on the Project, Texas Eastern must clear trees along the pipeline route. *Id.* ¶ 17. The inability to access certain parcels of land for tree clearing would require Texas Eastern to "skip" construction on that parcel and return later if and when the easements are acquired, resulting in further cost and delay. *See Id.* ¶ 27. This ostensibly constitutes irreparable harm. *See Sage*, 361 F.3d at 829 ("[t]o require ETNG to build up to a parcel of land [it] do[es] not possess, skip that parcel, and then continue on the other side would prove wasteful and inefficient.") (internal quotation marks and citation omitted).

Moreover, because a significant portion of the Project will be located in known long-eared bat habitats, the FERC certificate requires Texas Eastern to conduct all tree-clearing activities between October 1, 2014 and March 31, 2015. Martin Aff. ¶ 18, ECF No. 2-1; FERC Cert. ¶ 39, ECF No. 1-2. If Texas Eastern is not granted immediate access to the property at issue, it will be unable to

complete the necessary tree-clearing by March 31, 2015. Martin Aff. ¶ 22, ECF No. 2-1. Texas Eastern will not be able to recommence clearing until October 1, 2015, which would delay the commencement and completion of the pipeline construction until 2016; in other words, Texas Eastern will be unable to complete the Project by the November 1, 2015 deadline established by FERC. *Id.* ¶ 23. An inability to meet the FERC-approved deadline has been considered as irreparable harm. *Se. Supply Header, LLC v. 180 Acres in George Cnty., Miss.*, No. 2:07CV280KS-MTP, 2008 WL 160700, at *3 (S.D. Miss. Jan. 9, 2008) ("Any delay in granting SESH access the [sic] Defendants' Property to begin construction activities will impede SESH's ability to provide the needed energy delivery services determines by FERC to be in the best interest of the public.").

Furthermore, the inability to timely begin tree-clearing will result in significant monetary penalties under Texas Eastern's tree-clearing construction contracts. "For example, if tree felling has not commenced by January 26, 2015, Texas Eastern will incur costs of $228,000. Costs grow larger for any additional delays and will exceed $1,130,000 if tree felling is not commenced by February 23, 2015." Martin Aff. ¶ 21, ECF No. 2-1. Courts have found such costs sufficient to constitute irreparable harm. *See, e.g., Gulf Crossing Pipeline Co. LLC v. 86.36 Acres of Land*, No. 08–689, 2008 WL 2465892, at *6 (W.D. La. June 18, 2008) (finding escalating construction delay penalties to constitute irreparable harm); *Se. Supply Header, LLC*, 2008 WL 160700, at *3 ("Additionally, the costs to SESH, its customers and the public will be significantly

increased because of skip-around costs if immediate possession is not granted. These increased costs are against public policy, and would be unrecoverable.").

Last, the inability to timely complete the Project would likely injure Texas Eastern's business reputation and goodwill. Petkovich Aff. ¶ 20, ECF No. 2-2 (testifying that Spectra's (Texas Eastern's) reputation is largely tied to its ability to execute projects timely and that its credibility in the marketplace is a key differentiator in its current negotiations of other billion dollar capital project expansions). That also ostensibly amounts to irreparable harm. *See Budget Rent A Car Sys., Inc. v. Miles*, No. C2–04–CV–1205, 2006 WL 2373255, at *3 (S.D. Ohio Aug. 14, 2006) ("[A] loss of customer goodwill and reputation can amount to irreparable injury because the damages flowing from such losses are difficult to compute.") (citation omitted).

Accordingly, the Court finds Texas Eastern will likely suffer irreparable harm if it is not granted immediate access to the properties described below. While the Court is typically loathe to find that economic harm amounts to irreparable harm for purposes of granting injunctive relief, the Court finds the evidence sufficient in this case, where the remaining factors weigh strongly in favor of granting injunctive relief. As explained below, FERC has found that the proposed pipeline is in the public interest, and Texas Eastern is likely to succeed on the merits eventually. Defendants are not harmed by the granting of injunctive relief unless Texas Eastern is ultimately unable to compensate them fully, a possibility this Court finds unlikely given its confidence that the security

deposit it demands of Texas Eastern will be sufficient to compensate Defendants for their land.  Nor is there harm to other third parties by the grant of injunctive relief.  Requiring Texas Eastern to derail its entire construction schedule and delay the same for the two defendants who have not voluntarily granted easements would cause harm to Texas Eastern, the various entities it has contracted with to build the pipeline, its customers, and the public in general who have an interest in the pipeline being completed at the lowest cost and as soon as possible.

### 3. Substantial Harm to Third Parties

Granting Texas Eastern immediate possession of Defendants' property would not cause substantial harm to third parties for three reasons: (1) Defendants will receive just compensation for their property interests; (2) contrary to harming the public, it is in the public interest to ensure the Project is completed without delay; and (3) before being granted immediate possession, Texas Eastern will pay an appropriate bond to the Court to ensure protection of Defendants' interests.  See Sage, 361 F.3d at 830 (rejecting the argument that possession before just compensation constitutes an inherent, irreparable harm); Gulf Crossing Pipeline, 2008 WL 2774534, at *5 (finding that the potential harm to the pipeline company and the public outweighs any harm to the defendant landowners) (collecting cases).  Absent any evidence as to how Defendants or the public will be substantially harmed by immediate possession, the Court finds that this factor weighs in favor of granting relief.

### 4. Public Interest

Granting Texas Eastern immediate possession of Defendants' property interests serves the public interest in three ways. First, FERC has approved the Project, and it is in the public interest to complete it without delay. *See Rockies Exp. Pipeline, LLC*, 2008 WL 4758688, at *3 (issuing an injunction would "serve the public interest in that it would aid in ensuring that the FERC-approved pipeline deadline is not delayed beyond the already adjusted target date.").

Second, timely completion of the Project is in the best interests of natural gas consumers, as it will "increase diversity of supply, enhance the ability of markets along the system to better manage price volatility, and provide additional security and reliability of service of the Texas Eastern system." OSU Economic Impact Study 16, Martin Aff. Ex. A, ECF No. 2-1.

Last, evidence indicates that construction of the Project will benefit Ohio's economy by creating approximately 3,000 jobs, adding value to Ohio's gross domestic product, and increasing the total economic output to various Ohio counties. *Id.* at 3.

This factor therefore weighs in favor of granting relief.

In sum, Texas Eastern's probability of success on the merits, the irreparable harm it would suffer absent injunctive relief, and the public interest in timely completion of the Project outweigh any potential harm to Defendants or the public. Accordingly, Texas Eastern is entitled to relief under Rule 65.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Condemnation Order, and TRO and Preliminary Injunction for Immediate Possession, ECF No. 2. The Court specifically orders the following:

(1) The Court recognizes and grants Texas Eastern the right to condemn Defendants' property interests outlined in Exhibit A to the Amended Complaint, ECF No. 16-1, as limited by paragraph three (3) below;

(2) The Court grants Texas Eastern immediate possession of the easement interests on the identified Defendant properties (see paragraph three) for tree clearing and all related construction activities approved by FERC;

(3) Notwithstanding the fact that Exhibit A to the Amended Complaint, ECF No. 16-1, identifies all named Defendants, the Court's Order applies only to the following categories of Defendants listed at the outset of this Order: the two remaining Defendant landowners; the non-fee interest holders who have not appeared in this action; the Defendants who have entered into stipulations with Texas Eastern; and the Defendants who have been served but have not made an appearance;

(4) To the extent this Order is inconsistent with the stipulations Texas Eastern has entered into with certain Defendants, the terms of those stipulations control;

(5) Pursuant to Federal Rules of Civil Procedure 65(c), 67, and 71.1(j)(1), the right to immediate possession of each identified Defendant property is

contingent upon Texas Eastern first depositing with the Clerk of Court an amount equal to the last appraisal made for each for each remaining defendant property;

(6) Pursuant to Federal Rules of Civil Procedure 65(c), 67, and 71.1(j)(1) and as an additional prerequisite to immediate possession of an identified Defendant property, Texas Eastern shall also post a surety bond in an amount equal to at least 30% greater than the last appraisal made for each identified Defendant property.  This additional sum will serve as a sufficient security to protect the interests of the landowners in any damages that may be awarded that exceed the deposited funds;

(7) No party should construe the minimum bond amount as any indication of the floor or ceiling of the ultimate amount of just compensation to which any landowner is entitled, given that the eventual compensation award by this Court, a jury, or a compensation commission may be lower, higher, or the same as this amount;

(8) The bond shall be conditioned on the fact that Plaintiff shall pay any and all final compensation damages awarded in excess of the deposited amount, and if such payments are made, then the bond shall be null and void upon full payment having been made; and

(9) Pursuant to Federal Rule of Civil Procedure 71.1(j)(2), the deposit of any funds for an identified defendant property shall constitute Plaintiff's agreement that the landowner can immediately access all or any portion of

the deposited funds, with the understanding that such withdrawal is at the landowner's peril and that if the ultimate compensation award is less than the amount withdrawn, the landowner will be liable for the return of the excess with appropriate interest.

**IT IS SO ORDERED.**

                                                   /s/ Michael H. Watson  
                                       **MICHAEL H. WATSON, JUDGE**  
                                       **UNITED STATES DISTRICT COURT**